# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                        Criminal No. 11-167 JRT/AJB

             Plaintiff,

v.                                                      **REPORT AND**
                                                         **RECOMMENDATIONS**

ANTHONY ALEX MUNOZ,

             Defendant.


       Kevin S. Ueland, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

       Paul C. Engh, Esq., for the defendant, Anthony Alex Munoz.

       This action came on for hearing before the Court, Chief Magistrate Judge Arthur J. Boylan, on June 10, 2011, at the U.S. Courthouse, 300 South Fourth St., Minneapolis, MN 55415.  Testimony was presented and exhibits were received at the hearing with regard to suppression of statements and search and seizure evidence.

       Based upon the file and documents contained therein, and the testimony at the hearing, the magistrate judge makes the following:

**Findings**

       **Search Warrant.**  The search warrant in this case was issued on July 24, 2007, authorizing the search of the address provided by Comcast, located on Fifth Avenue East, Saint Paul, Minnesota.  The search warrant identified the objects of the warrant as child pornography or visual depictions of minors engaged in sexually explicit conduct; and any such depictions contained on computer systems and data storage media, including hard drives and removable media; computer passwords and other data security devices; papers and materials indicating

possession or distribution of child pornography; papers and materials pertaining to accounts with Internet Service Providers; and papers and materials regarding the ownership of the premises and computers found on the premises.  See Search Warrant, Hearing Ex. 1.

The affidavit underlying the search warrant application[1] states that on February 1, 2007, Chadwick Opitz, an FBI Task Force Officer in Portland, logged into an online chat room at the website www.hello.com ("hello.com") using the screen name "cerealtime," a name associated with Travis Grygla, an individual who had previously admitted downloading child pornography from the website.  Mr. Grygla had been arrested for possession of child pornography several days earlier.  He had informed Officer Opitz that he traded child pornography with individuals in his "friends" list at hello.com, and authorized the FBI to use his online identity.  While logged into the chat room under the name "cerealtime," Officer Opitz communicated with an individual using the screen name "ChazDavis," who sent him 19 images including child pornography.  On February 9, 2007, Mr. Grygla was interviewed in custody, and confirmed that "ChazDavis" was the screen name of an individual with whom he had traded child pornography.

According to the affidavit, Officer Opitz served an administrative subpoena on Google and obtained an Internel Protocol ("IP") address for "ChazDavis."   Officer Opitz searched for the IP address in the internet registry database and discovered the IP address was registered to Comcast.  Officer Opitz served an administrative subpoena on Comcast and on

---

[1] The facts underlying the warrant application are not findings of this court based on the testimony at the hearing, but reflect the facts presented in the affidavit of FBA Special Agent K. C. Chanmugen of the Minneapolis Cyber Crimes Task Force, to the Hon. Susan R. Nelson, then a United States Magistrate Judge, in support of the search warrant application.  Judge Nelson was appointed to the District Court bench on December 22, 2010.

February 27, 2007, learned the physical address associated with the IP address, as well as the name of the subscriber, Anthony Munoz.

The affidavit states that at some point thereafter, FBI Special Agent K.C. Chanmugen of the Minneapolis Cyber Crimes Task Force personally reviewed the files "ChazDavis" sent to Officer Opitz, and determined that at least two of those files contained images of child pornography. Through public records database searches and communication with a United States Postal Inspector, Agent Chanmugen verified that an Anthony Munoz lived at the address provided by Comcast.

**Statement of the Defendant - July 26, 2007.** The above-described search warrant was executed on the morning of July 26, 2007 by seven investigators, including Agent Chanmugen and Special Agent Maureen Lese. Executing officers knocked on the door, which was answered by Darcy Munoz, the defendant's wife. The defendant was not present. The officers entered the house with firearms drawn and immediately conducted a security check of the residence. When the residence was secure the officers began executing the search warrant.

Approximately 35 minutes later, the defendant returned home. Agent Chanmugen spoke to the defendant to explain what was happening. The defendant accompanied Agents Chanmugen and Lese to the basement family room of his home for an interview. Defendant sat on one of two couches, and the agents sat on the other. At the start of the interview, the agents told defendant he was not under arrest and would not be arrested after the interview, that he was free to move about, and that he did not have to answer any questions; however, the agents did not read Miranda warnings to the defendant. The defendant made no request that an attorney be present during questioning.

3

The interview lasted approximately one hour.  The defendant was not restrained in any way; he used his phone several times during the interview.  He did not ask for the assistance of an attorney at any time.  During the interview, the defendant admitted possessing child pornography and told agents child pornography would be found on a computer seized from the residence in a file folder named "cyberlink."

**Statement of the Defendant - March 24, 2011.**  Agent Lese and FBI Special Agent Paul Couturier returned to defendant's home at approximately 7:30 a.m. on March 24, 2011, for a second interview.  When the officers arrived and knocked on the door, the defendant answered.  The officers identified themselves, told the defendant they would like to talk with him, and advised him that his participation in the interview was completely voluntary.  Again, they did not read Miranda warnings to the defendant.  The defendant invited the officers into the living room.  The defendant sat at one end of a couch, and the interviewing agent sat on a chair or ottoman facing the couch.  The defendant was not in handcuffs or restrained, and got up several times during the interview to attend to his three-year-old son.   The agents did not raise their voices or use any threats or intimidation.  The interview lasted about an hour.

Based upon the foregoing Findings, the Magistrate Judge makes the following:

**Conclusions**

**Search warrant.**  Evidence seized pursuant to a warrant authorizing the search of a particularly described residential location in Saint Paul, Minnesota was not unlawfully obtained in violation of the constitutional rights of defendant Alex Munoz.  The residence search warrant was issued on July 24, 2007, and was based upon sufficient probable cause as stated in the Affidavit of Agent K. C. Chanmugen, and as determined by Judge Nelson.  The warrant

properly identified the location of the search and the items to be seized.  The search warrant in this matter was lawfully executed and there is no requirement for suppression of evidence seized pursuant to the warrant.  In addition, no evidence obtained in the search or thereafter is subject to suppression as fruit of an unlawfully obtained search warrant.

"Probable cause for a warrant search exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Estey, 595 F.3d 836, 840 (8th Cir. 2010) (internal quotation omitted).  The defendant challenges the reliability of the information provided by Mr. Grygla, who knew only the screen name of the person with whom he shared files.  "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993).  However, Mr. Grygla is not an "informant" in the traditional sense, because a determination of probable cause does not depend on Mr. Grygla's identification of defendant.  The United States concedes Mr. Grygla did not know the real name, physical location or any other identifying information about the individual appearing online as "ChazDavis."  Agent Chanmugen's supporting affidavit makes clear that the information Mr. Grygla provided only confirmed information obtained directly from Mr. Grygla's computer – namely, that images of child pornography had been downloaded from an individual who used the screen name "ChazDavis" on a particular website, hello.com.

The data obtained from Mr. Grygla's computer – which was confirmed by Mr. Grygla –  permitted a reasonable inference that child pornography might be found on computers associated with the individual who accessed the hello.com website using the screen name "ChazDavis."   Through the use of administrative subpoenas, law enforcement linked the

"ChazDavis" screen name to an individual named Anthony Munoz located at an address in Saint Paul, Minnesota. Further investigation confirmed that an Anthony Munoz did in fact live at that address. Accordingly, as of February 27, 2007, Agent Chanmugen had reason to believe that child pornography would be found on the computers and storage media located at the physical address linked to the "ChazDavis" screen name. The court finds the information supporting the warrant was sufficiently reliable.

The defendant also argues too much time elapsed between the February 1, 2007 transfer of images and the July 24, 2007 application for the search warrant. "The date of the evidence in the affidavit is important to the probable cause determination because untimely information may be deemed stale." United States v. Lemon, 590 F.3d 612, 614 (8th Cir. 2010). However, "[t]here is no bright-line test for determining when information in a warrant is stale." Id. (internal quotation omitted). "The lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." Id. (internal quotation omitted). The Eighth Circuit has held that "[p]ossession of child pornography is a crime that is continuing in nature," and "technological advances have increased the ease with which child pornography may be produced, maintained, or distributed – making it all the more likely that the contraband will be retained." Id. at 615, 616. Accordingly, the Eighth Circuit has found that a delay of eighteen months between the last download of images and the warrant application was "hardly unprecedented" and did not render the information stale. Id. at 615. The same is true of shorter delays. See Estey, 595 F.3d at 840 (five months); United States v. Horn, 187 F.3d 781, 786-87 (8th Cir. 1999) (four months).

Here, we are faced with a lapse of less than six months. The Eighth Circuit has

unequivocally held such a delay, in cases involving child pornography, does not render the information stale. The Eighth Circuit has not established a bright-line test, and on the facts of this matter, the court sees no reason to do so. The delay in obtaining the search warrant was reasonable, and the search was not illegal. Defendant's motion to suppress the search warrant should be denied.

**Statements.** Defendant Munoz's statements to investigators at his residence on July 26, 2007 and March 21, 2011 were voluntary and were not obtained in violation of the defendant's constitutional rights. "Law enforcement officials must administer Miranda warnings whenever they interrogate persons in their custody." United States v. Brave Heart, 397 F.3d 1035, 1038 (8th Cir. 2005); see Miranda v. Arizona, 384 U.S. 436, 444 (1966). To determine whether the defendant was in custody, the court looks to the "totality of the circumstances confronting the defendant at the time of questioning," and bases its determination "on the objective circumstances of the interrogation rather than the subjective views" of either the defendant or the interrogating officers. Id. (internal quotations omitted). The only relevant inquiry is whether a reasonable person in defendant's position would have felt free to terminate the interview. See id. at 1038-39; see also United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004).

"When a suspect is interrogated in the comfort and familiarity of his home, a court is less likely to find the circumstances custodial." United States v. Axsom, 289 F.3d 496, 502 (8th Cir. 2002). Similarly, when a suspect is expressly told that his participation in the interview is voluntary and that he need not speak to the officers, it permits a "natural inference that such questioning is non-custodial" which may be overcome only with "strong evidence of restraint on

7

freedom of movement of the degree associated with a formal arrest." <u>Czichray</u>, 378 F.3d at 830.

Defendant urges an analogy to <u>United States v. Longbehn</u>, 850 F.2d 450, 452-53 (8th Cir. 1988).  The defendant in <u>Longbehn</u> was a police officer suspected of taking bribes and disclosing confidential information to a family member suspected of drug trafficking.  <u>Id.</u> at 451.  In that case, the defendant was detained at the police firing range, instructed to disarm, transported home and then questioned by fellow officers executing a search warrant, and finally transported back to the police station, where he was placed on administrative leave and told for the first time he was free to go.  <u>Id.</u> at 452-53.  The Eighth Circuit found these circumstances "police-dominated, inherently coercive, and tantamount to a formal arrest."  <u>Id.</u> at 453.

Here, the facts in the record indicate the defendant was not in custody such that <u>Miranda</u> warnings were required.   The defendant was interviewed at home and was never transported to any other location.  On both occasions only two agents were involved in the interview.  The agents expressly advised him at the start of each interview that his participation was entirely voluntary, that he was free to move about, and that he would not be arrested at the conclusion of the interview.  The agents sat several feet away from the defendant and did not display their weapons or give any show of force.  The defendant was not physically restrained in any way.  He was free to – and did – get up, move about, speak on his phone and attend to his young son.  Each interview lasted approximately one hour.  At the conclusion of each interview, the defendant was not arrested.  The unusual circumstances in <u>Longbehn</u> are entirely distinguishable from the record before the court.

Defendant also suggests that, even if the interviews were non-custodial, they were involuntary. The United States Supreme Court has observed:

> We recognize, of course, that noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where the behavior of law enforcement officials was such as to overbear [defendant's] will to resist and bring about confessions not freely self-determined.

Beckwith v. United States, 425 U.S. 341, 347-48 (1976).  However, there is no evidence of coercion or actions designed to overcome the defendant's will.  Defendant was interviewed at home on two occasions for about an hour.  No promises or threats were made.  Defendant was not physically restrained in any way and was free to move about his home and attend to his business.  He was expressly advised that he did not have to speak to the agents.  Under the totality of the circumstances, there is no basis to find defendant's statements were anything other than voluntary.

Finally, defendant invites the court to weigh in on the FBI's interview methodology, specifically suggesting that it would be appropriate if the agents were required to record noncustodial interviews in order to preserve exact quotations.  The court declines the invitation.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Anthony Alex Munoz's Motion to Suppress Evidence of Search and Seizure be **denied** [Docket No. 19]; and

2. Defendant Anthony Alex Munoz's Motion to Suppress Statements be **denied** [Docket No. 20].

Dated: July 5, 2011

                                                  s/ Arthur J. Boylan
                                                  Arthur J. Boylan
                                                  United States Chief Magistrate Judge

        Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **July 18, 2011.**

        Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.