# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 11-167 (JRT/AJB) |
| Plaintiff, | |
| v. | **ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE DATED JULY 5, 2011** |
| ANTHONY ALEX MUNOZ, | |
| Defendant. | |

---

Kevin S. Ueland, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Paul C. Engh, **PAUL ENGH LAW OFFICE**, 220 South Sixth Street, Suite 215, Minneapolis, MN 55402, for defendant.

Defendant Anthony Alex Munoz has been charged with possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4) and 2252(b)(2). Munoz moved to suppress both evidence obtained through the execution of a search warrant on his home on July 26, 2007, as well as statements he made to officers on that day and subsequently on March 24, 2011. On July 5, 2011, United States Magistrate Judge Arthur J. Boylan issued a Report and Recommendation ("R&R") recommending that the Court deny both motions. Having reviewed *de novo* those portions of the Magistrate Judge's R&R to which Munoz objects, *see* 28 U.S.C. § 636(b)(1)(C), D. Minn. L.R. 72.2, the Court adopts the R&R and denies Munoz's motions.

## BACKGROUND

The challenged search warrant was issued on July 24, 2007 for Munoz's residence in St. Paul.  The search warrant affidavit discusses an undercover operation which resulted in the arrest and conviction for child pornography charges of a Portland, Oregon resident named Travis Grygla.  Under the screen name "cerealtime" and through an internet site called hello.com, Grygla downloaded and shared child pornography on the internet.  Grygla permitted government agents to use his hello.com screen name and password, and to employ his online identity.  On February 1, 2007, while logged onto hello.com using Grygla's "cerealtime" account, Federal Bureau of Investigations ("FBI") Task Force Officer Chadwick Opitz received nineteen images, including images of child pornography, from an individual using the screen name "ChazDavis."  On February 9, 2007, during an interview in custody, Grygla confirmed that "ChazDavis" was the screen name of an individual with whom he had traded child pornography previously.  Through administrative subpoenas, agents traced the Internet Protocol ("IP") address of "ChazDavis" to Munoz's residence.  The search warrant identifies the objects of the warrant as child pornography or visual depictions of minors engaged in sexually explicit conduct, any such depictions contained on computer systems and data storage media, and papers and materials pertaining to IP accounts and ownership of the premises and computers found on the premises.

On July 26, 2007, agents executed the search warrant on Munoz's home.  Munoz was not initially present; his wife opened the door.  Munoz returned to his residence shortly after agents began their search.  Upon his arrival, agents advised Munoz that he

was not under arrest, that he did not have to talk to the agents, but that the agents would like to speak with him.  Munoz agreed to speak with two agents.  Their conversation occurred in Munoz's basement and lasted approximately one hour, during which Munoz admitted to possessing child pornography and directed agents to the computer file containing the images.  During the conversation, Munoz was not physically restrained; on several occasions, he stood up to use his telephone.  Munoz made no request to speak with an attorney.  The agents, however, did not read *Miranda* warnings to Munoz.  On March 24, 2011, two agents returned to Munoz's residence, identified themselves, and asked to speak with him.  As during the execution of the search warrant, agents informed Munoz that he was not under arrest and that he was not obliged to talk with them.  Once again, the agents did not read Munoz *Miranda* warnings.  Munoz invited the agents into his home and agreed to speak with them.  Munoz was again not physically restrained during the approximately one-hour long conversation in his living room.  During the interview, Munoz got up several times to attend to his young son.  The agents did not raise their voices or use any threats.

Munoz moved to suppress evidence resulting from the execution of the search warrant.  In addition, Munoz moved to suppress the statements he made to the agents.[1] The Magistrate Judge recommended denying both motions, and Munoz filed timely objections.

---

[1] In his objection, Munoz also "request[s] the Court's thoughts on the FBI's methodology[,]" and suggests policy alternatives to its interrogation procedures.  (Def.'s Obj. at 6, Docket No. 29.)  The Court declines to discuss policy prescriptions and will limit its consideration to the instant motions and Munoz's objections to the R&R.

**ANALYSIS**

**I.    MOTION TO SUPPRESS EVIDENCE**

Munoz first objects to the Magistrate Judge's recommendation that the Court deny the motion to suppress evidence gleaned from the July 2007 search.  Specifically, Munoz argues that (a) the search warrant was not supported by probable cause, and (b) it was rendered stale by the gap in time between the averment of probable cause and the search of Munoz's home.

**A.    Probable Cause**

"In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband." *United States v. Lowen*, No. 10-96, 2010 WL 2653224, at *8 (D. Minn. June 1, 2010). "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  "Whether probable cause . . . has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge 'should be paid great deference by reviewing courts.'"  *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *Gates*, 462 U.S. at 236).

Munoz's objection focuses on whether Grygla is a reliable informant. *See United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) ("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable."). Probable cause, however, was established when Munoz sent images of child pornography to Opitz over the internet. Grygla's interview testimony merely corroborated the information the agent had already obtained: that an individual with the user name "ChazDavis" had downloaded images of child pornography. This information supported a fair probability that evidence of possession of child pornography might be found on the computer of "ChazDavis." The government subsequently used subpoenas to Google and Comcast, not information from Grygla, to identify Munoz's residence. The Court readily concludes that probable cause existed to support the search warrant.

### B.    Staleness

Munoz argues that the search warrant was stale because of the gap in time between the February 1, 2007 transfer of images to Opitz and the July 24, 2007 search warrant application. *See United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009) ("A warrant becomes stale if the information supporting [it] is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." (Internal quotations omitted.)). However, "[t]here is no bright-line test for determining when information is stale . . . [T]ime factors must be examined in the context of a specific case and the nature of the

crime under investigation." *United States v. Estey*, 595 F.3d 836, 840 (8th Cir. 2010) (omission original, internal quotation marks omitted).

The Eighth Circuit has previously concluded that "evidence developed within several months of an application for a search warrant for a child pornography collection and related evidence is not stale." *Id.* (finding five month delay before executing search warrant on defendant's residence did not render warrant stale).  The July 2007 search warrant affidavit asserts that individuals who collect child pornography seldom dispose of their materials. *See United States v. Horn*, 187 F.3d 781, 786 (8th Cir. 1999) ("[T]he lapse in time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated.").  Accordingly, courts consistently uphold child pornography warrants where the delay in executing the warrant is even longer than the less-than-six month period at issue in this case. *See, e.g.*, *United States v. Davis*, 313 Fed. App'x 672, 674 (4th Cir. 2009) (one year); *United States v. Lacy*, 119 F.3d 742, 745-46 (9th Cir. 1997) (ten months).  While the Court does not disagree with Munoz's assertion that "there must be an outermost reach, a point when then information is decayed beyond the useful[,]" the Court need not consider that point in the context of the instant motion.  (Def.'s Obj. at 4, Docket No. 29.)  The relatively modest delay in executing the search warrant of Munoz's residence did not render the warrant stale.

## II.     MOTION TO SUPPRESS STATEMENTS

"Under the Fifth Amendment, *Miranda* warnings are required when interrogation is initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *United States v. Muhlenbruch*, 634 F.3d 987, 995 (8th Cir. 2011) (internal quotation marks omitted); *see Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "If an individual is not subjected to custodial interrogation, no warning need be given." *United States v. Johnson*, 619 F.3d 910, 919 (8th Cir. 2010). Munoz objects to the Magistrate Judge's conclusion that he was not in custody during his two interviews with FBI agents, and that his statements were therefore voluntary and not obtained in violation of his constitutional rights.

"Whether [Munoz] was in custody turns on whether, under the totality of the circumstances he faced at the time of his questioning, a reasonable person in his position would have felt free to end the interrogation and leave." *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009). "When a suspect is interrogated in the comfort and familiarity of his home, a court is less likely to find the circumstances custodial." *United States v. Axsom*, 289 F.3d 496, 502 (8th Cir. 2002). Both of Munoz's interviews were conducted in his home. In addition, the agents expressly informed Munoz that his participation in the interviews was voluntary and that he was not required to speak with them. "Where a suspect is questioned in . . . his home, and informed several times of his right to terminate the interview at will, . . . strong evidence of restraint on freedom of movement of the degree associated with a formal arrest is necessary to overcome the natural inference that such questioning is non-custodial." *United States v. Czichray*, 378

F.3d 822, 830 (8th Cir. 2004).  There is no evidence that Munoz's freedom of movement was restrained in any way: to the contrary, he interrupted both interviews to get up, speak on his telephone, and attend to his son.  Considering the totality of the circumstances of Munoz's interviews, the Court concludes that he was not in custody and that the statements were made voluntarily.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, the Court **OVERRULES** Munoz's objections to the Report and Recommendation [Docket No. 29], and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated July 5, 2011 [Docket No. 28].  **IT IS HEREBY ORDERED** that:

1.   Munoz's Motion to Suppress Evidence of Search and Seizure [Docket No. 19] is **DENIED**.

2.   Munoz's Motion to Suppress Statements [Docket No. 20] is **DENIED**.


DATED:  September 7, 2011
at Minneapolis, Minnesota.

_s/ John R. Tunheim_
JOHN R. TUNHEIM
United States District Judge